**RISSELL LAW, APC**
201 Spear St, Suite 1100
San Francisco, CA 94105
Telephone: (415) 874-7288
Facsimile: (415) 874-7292
Melody Rissell Leonard (SBN: 330025)
melody@risselllawfirm.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT
7/9/2024 11:23 AM
By: Eric Rowe, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

## UNLIMITED JURISDICTION

|  |  |
|---|---|
| GABRIEL URTIAGA, an individual<br><br>Plaintiff,<br><br>v.<br><br>ULINE, INC., a Delaware corporation;<br>ONSITE HEALTHCARE, a California<br>corporation; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.  CIVSB2422262<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Disability Discrimination, (Cal. Gov't Code § 12940(a));<br>2.  Failure to Prevent Discrimination & Retaliation, (Cal. Gov't Code § 12940(k));<br>3.  Failure to Engage in a Good Faith Interactive Process, (Cal. Gov't Code § 1290(n));<br>4.  Failure to Provide a Reasonable Accommodation, (Cal. Gov't Code §12940 (m));<br>5.  Retaliation in Violation of FEHA, (Cal. Gov't Code §12940(h));<br>6.  Wrongful Termination in Violation of Public Policy;<br>7.  Violation of Constitutional Right to Privacy;<br>8.  Unlawful Medical Inquiry in Violation of FEHA;<br>9.  Failure to Permit Inspection of Employee records (Cal. Labor Code § 226);<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff Gabriel Urtiaga (Plaintiff) began working as a General Warehouse Employee for ULINE, Inc. ("ULINE") on January 30, 2017. In or around May of 2023, Plaintiff was transferred to ULINE's Facilities Department to work as a Facilities Custodian. Plaintiff worked as a Facilities Custodian for ULINE until his unlawful termination on November 7, 2023.

On October 17, 2023, Plaintiff injured his back several hours into his regular shift. After Plaintiff was injured, he notified a Team Lead that he was having discomfort in his back. His team lead informed Carlos, the newest safety coordinator, about Plaintiff's back pain. Carlos asked Plaintiff several questions about his injury and pain, and then dispatched Onsite Healthcare ("Onsite") to the ULINE facility. Onsite evaluated Plaintiff and treated him in front of Carlos. Onsite also required that Plaintiff take a urine test immediately. ULINE has a uniform policy that requires all warehouse employees to consent to an unlawful drug test upon reporting a workplace injury, even when ULINE has no reasonable suspicion that the employees were intoxicated at the time of injury. ULINE also maintains an unlawful policy which it uses to randomly drug test its warehouse employees without any reasonable suspicion of intoxication.

Plaintiff had no choice but to consent to treatment in front of Carlos and the unlawful urine drug test. Plaintiff tested negative for any unlawful substances in his system. Onsite's medical professional confirmed Plaintiff's back injury, noting that his right side of his back was very enflamed. She advised him to rest and begin modified work duties.

A few days later, on November 3, 2023, Plaintiff arrived to work and was informed by a ULINE representative that he was being placed on an administrative leave pending its investigation of his October 17, 2023 work injury.

On November 6, 2023, Plaintiff called asking for an update, as he wanted to return to work. On November 7, 2023, Plaintiff was informed by an individual from ULINE's Human Resources Department that he was being terminated. Amanda Russell from HR explained that ULINE was terminating Plaintiff's employment and no reason was given. Upon Plaintiff's repeated request for an explanation as to why ULINE decided to end his nearly six year career with ULINE, Ms. Russell

1   stated that it was because Plaintiff misrepresented his work injury claim. Neither Uline nor its

2   representatives provided Plaintiff with further details on the matter. Plaintiff called and emailed

3   seeking clarification on the reasons for termination, yet no clarification or response was provided.

4   On information and belief, ULINE terminated Plaintiff due to his workplace injuries, resultant time

5   off from work, and his requests for reasonable accommodations. On information and belief,

6   Plaintiff's reasonable accommodations did not place an undue hardship on ULINE at any time.

7       ULINE maintained an unlawful policy and/or practice which requires that its employees

8   who are injured at work immediately submit to a drug test without any evidence, or any attempt to

9   gather evidence, which in any way demonstrates that the employee was intoxicated at the time of

10  the incident. At all times, ULINE's policies that its employees immediately submit to a drug and/or

11  urine test through Onsite following a workplace injury was and is unlawful.

12      Defendants' demand that Plaintiff submit to an unlawful drug and/or urine test immediately

13  after suffering a workplace injury amounted to an unlawful inquiry into Plaintiff's protected and

14  confidential medication information as well. At no time did either ULINE or Onsite require such

15  drug testing of Plaintiff, and/or implement such drug testing on Plaintiff, for the purpose of

16  determining his fitness. As a result, at no time did Defendants have any lawful rationale for

17  inquiring into the medical status and/or medical information of Plaintiff through their post-

18  workplace injury drug and/or urine test.

19      Because the demand that Plaintiff submit to a drug test lacked the requisite good cause

20  necessary to demand such a test under California law, and, therefore, was unlawful, Defendants'

21  conduct amounted to an unlawful invasion of Plaintiff's privacy and ULINE's unlawful medical

22  inquiry. In truth, ULINE's demand that Plaintiff submit to a drug test was simply an act of

23  discrimination and/or retaliation, which Onsite aided and abetted as an accomplice. In demanding

24  Plaintiff's unlawful drug test with Onsite, it was merely that ULINE sought any justification it

25  could find to unlawfully discriminate against and terminate Plaintiff for being disabled and/or

26  requesting accommodations. When this did not work, it concocted a sham investigation into

27

28

Plaintiff's workplace injury, falsely accusing him of misrepresenting that injury. It then used the false allegations of misrepresentation as a pretext to terminate his employment.

Plaintiff brings this action for violations of California's Fair Employment and Housing Act ("FEHA"; Gov't. Code § 12900 *et seq.*; Labor Code § 226), including disability discrimination, failure to prevent discrimination and retaliation, failure to engage in a good faith interactive process, failure to provide reasonable accommodations, retaliation in violation of the FEHA, wrongful termination in violation of public policy, violation of his right to privacy as provided for by the California constitution, an unlawful medical inquiry in violation of the FEHA; and failure to permit inspection of employee records. He seeks all remedies available at law, including but not limited to economic and general damages, punitive damages, equitable and injunctive relief, penalties, and attorneys' fees and costs.

## VENUE AND JURISDICTION

1.    Plaintiff is an individual residing in the County of San Bernardino in the State of California. He was employed by ULINE in the County of San Bernardino in California.

2.    Personal Jurisdiction is proper under the California Code of Civil Procedure ("CCP") section 410.10 because Defendants, and each of them, have maintained sufficient minimum contacts with the State to make the exercise of personal jurisdiction reasonable and just under contemporary standards. Defendant ULINE is a Delaware corporation doing business in the state of California and maintains an office in San Bernardino County, California. Defendant Onsite is a California corporation doing business in the state of California and has a clinic in San Bernardino County, CA.

3.    This action seeks damages in excess of $35,000 and the action is not of otherwise limited jurisdiction. (CCP §§ 86, 88).

4.    Subject matter jurisdiction in this matter is conferred by the California Constitution, Article VI, sections 11-12 and the California Code of Civil Procedure section 410.50.

5.    Jurisdiction of this Court is also invoked pursuant to the FEHA. Specifically, Gov't. Code section 12965(b) provides that after receiving a right to sue letter from the Civil Rights

1   Department ("CRD"), an aggrieved individual may file a civil lawsuit "against the person,

2   employer, labor organization or employment agency named in the verified complaint within one

3   year from the date of that notice."

4          6.      Plaintiff has fulfilled all of the conditions precedent to the institution of this action

5   under Govt. Code sections 12960, 12965.

6          7.      Venue in this Court is proper pursuant to the California Code of Civil Procedure

7   section 395 *et seq.* because at least one of the Defendants has an office in San Bernardino County

8   and does substantial business in San Bernardino County. Further, the unlawful acts described herein

9   originated in San Bernardino County.

10         8.      Venue is further appropriate in San Bernardino County in accordance with Section

11  12965(b) of the California Government Code because the unlawful acts alleged herein in violation

12  of the FEHA were committed, at least in part, in the County of San Bernardino. Plaintiff worked

13  and would have continued to work in San Bernardino County but for Defendants' unlawful acts,

14  and Plaintiff's employment records were and are maintained and administered in the County of San

15  Bernardino.

16                                    **PARTIES**

17         9.      Plaintiff is a resident of Fontana, California. At all relevant times, Plaintiff worked

18  for Defendants in the state of California, County of San Bernardino.

19         10.     Plaintiff is a natural person with a physical disability, perceived disability, or actual

20  and/or perceived potential disability as defined in California Government Code section 12926(m).

21  Moreover, Plaintiff was an "employee" of Defendants within the meaning of Government Code

22  Section 12926(c), the applicable Industrial Wage Commission Order, and the California Labor and

23  Government Codes.

24         11.     Defendant ULINE, Inc. ("ULINE" and/or "Employer") is, and at all times

25  mentioned was a Delaware corporation which does business nationwide with its headquarters at

26  12575 Uline Drive in Pleasant Prairie, Wisconsin 53158. ULINE regularly employed and continues

27

28

1    to employ at least five persons in the state of California during the relevant periods at issue herein;

2    as such, Defendants are "employers" within the meaning of FEHA.

3          12.    Defendant Onsite Healthcare ("Onsite") is, and at all times mentioned, a California

4    corporation with its headquarters at 1319 Fairfield Street in Glendale, California 91201. Defendant

5    Onsite regularly employed, and continues to employ, at least five persons in the state of California

6    during the relevant periods at issue herein; as such, Defendant is an "employer" within the meaning

7    of the FEHA. Onsite acted as an agent of ULINE and is liable for aiding and abetting ULINE in its

8    unlawful discrimination against Plaintiff. Pursuant to Gov. Code Section 12926(d), "any person

9    regularly employing five or more persons, or any person acting as an agent of an employer, directly or

10   indirectly." *See Raines v. U.S. Healthworks Medical Group* (2023) 15 Cal.5th 268.

11         13.    Plaintiff does not know the true names or capacities, whether individual, partner or

12   corporate, of the Defendants sued herein as DOES 1 through 20, inclusive. For that reason, these

13   Defendants are sued under fictitious names, and Plaintiff prays for leave to amend this complaint

14   when the true names and capacities are known. Plaintiff is informed and believes and based thereon

15   alleges that each of said fictitious Defendants were responsible in some way for the matters alleged

16   herein and proximately caused Plaintiff to be subject to the illegal employment practices, wrongs

17   and injuries complained of herein.

18         14.    ULINE, Onsite, and DOES 1-20 will hereafter be collectively referred to as

19   "Defendants."

20         15.    At all times herein mentioned, all Defendants participated in the doing of the acts

21   hereinafter alleged to have been done by the named Defendant; and furthermore, the fictitious

22   Defendants, and each of them, were the agents, servants and employees of the named Defendant,

23   as well as the agents of all Defendants, and at all times herein mentioned, were acting within the

24   course and scope of said agency and employment.

25         16.    Plaintiff is informed and believes and based thereon alleges that at all relevant times,

26   each of the Defendants was the agent, employee, alter ego and/or joint venturer of, or working in

27   concert with each of the other co-Defendants and was acting within the course and scope of such

28

agency, employment, joint venture, or concerted activity. To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants.

17.    At all relevant times, the acts and omissions of various Defendants, and each of them, contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged. At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as herein alleged.

### AGENCY

18.    Plaintiff is informed and believes, and on that basis, alleges that at times herein mentioned each of the Defendants was an agent, manager, director, servant, employee, and/or joint-venturer of each of the remaining Defendants, and were at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each of the Defendants have at times ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts. In the alternative, Plaintiff alleges that Defendants, and each of them, exceeded the course and scope of their agency relationship with one another, rendering the agent(s) liable for their own individualized misconduct.

### ALTER EGO

19.    There is a unity of interest between one or more of the Defendants, and each acts as the alter ego of the other. Additionally, at all times relevant herein, Defendants were joint employers of the Plaintiff, by virtue of sharing authority over and control of the terms and conditions of Plaintiff's employment.

20.    As a direct and proximate result of Defendants' unlawful acts alleged herein, Plaintiff has suffered and continues to suffer from lost earnings and benefits, out-of-pocket losses, mental and emotional distress, and other damages in amounts to be established at trial and exceeding the jurisdictional minimum of this court.

1   Plaintiff has incurred and continues to incur legal expenses and attorney fees to which he is entitled

2   under California law, including but not limited to the FEHA. Plaintiff is presently unaware of the

3   precise amount of these expenses and fees, and he prays leave of court to amend this complaint

4   when the amounts are more fully known.

5                    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6        21.    Plaintiff has obtained a right to sue and confirmation from the CRD that his

7   complaint will not be pursued by the CRD. Plaintiff is therefore entitled to proceed with a civil

8   action to pursue all remedies available to him by law.

9                                        **FACTS**

10       22.    ULINE is a corporation that offers shipping and packing supplies, industrial

11  supplies, and bulk business goods with an office located at 4810 South Hellman Avenue Ontario,

12  California 91762, and Plaintiff worked at this location. At all times herein, ULINE is and was an

13  employer with more than 9,000 employees nationwide.

14       23.    At all times herein, Onsite was retained by ULINE to provide medical services to

15  ULINE employees who were injured while working and required medical treatment. Onsite also

16  performed the urinalysis and/or drug tests that ULINE requires of its injured employees.

17       24.    On January 30, 2017, ULINE hired Plaintiff as a General Warehouse employee. In

18  2019, Plaintiff was injured on the job. Plaintiff had three herniated discs. Plaintiff filed a workers

19  compensation claim with respect to that injury. Plaintiff required a leave of absence that exceeded

20  six months due to the treatment he required as a result of the 2019 workplace injury.

21       25.    At the time of his second workplace injury on October 3, 2024, Plaintiff was a

22  Facilities Custodian. Plaintiff's duties included maintaining the cleanliness of his designated zone,

23  both outside and inside the building. Plaintiff successfully performed the essential functions of a

24  Facilities Custodian throughout his employment.

25       26.    Plaintiff had a strong work ethic throughout his time as a Facilities Custodian. There

26  was no indication from ULINE or Plaintiff's supervisors that he was performing at anything less

27  than a satisfactory level.

28

27.    On October 17, 2023, Plaintiff suffered a workplace injury within the course and scope of his duties for ULINE. This injury occurred several hours into his regular work shift. Plaintiff was injured while performing his standard job duties.

28.    Immediately following his injury, Plaintiff notified his Team Lead at ULINE that he was experiencing discomfort and potentially exacerbation of his back injury. His Team Lead informed Carlos, the newest safety employee at ULINE about this injury. Carlos stated that typically the other safety employees like Jonas and David did not typically call Onsite right away, but that they waited a few days to confirm that injury was severe enough that it warranted calling Onsite.

29.    However, despite this standard practice, Carlos stated that he would call Onsite right away as he knew of Plaintiff's 2019 workplace back injury. Carlos then dispatched Onsite, who sent its medical evaluator to the jobsite. On information and belief, pursuant to ULINE's request and standard policies, Onsite required that Plaintiff take an immediate urine test. Plaintiff complied with the request and tested negative for unlawful substances. The Onsite representative examined him by touching his back, and eventually his lower back area. She then told him that his right side was really enflamed. She offered to perform "biofreeze" and massage out the right side of his back. She also offered him ibuprofen, which he accepted and took. Carlos was present for the duration of this appointment. Although Plaintiff was asked if he would consent to his presence, he felt he had no real ability to decline Carlos's presence during the Onsite treatment at ULINE.

30.    On November 3, 2023, Plaintiff arrived to work for his regular shift. Plaintiff was informed by Uline HR that he was being placed on administrative leave pending an investigation of his October 17, 2023 work injury.

31.    From November 3, 2023, to November 7, 2023, Plaintiff received no contact from Uline or its representatives on the status of the investigation or his employment status. Plaintiff called on November 5 for an update and asked if he could return to work, and was told the investigation was still ongoing.

32.     On November 7, 2023, Plaintiff was informed by Amanda Russell of HR, that his employment was being terminated. No reason was given. Upon his repeated requests for an explanation as to why his employment was being terminated, Russell told Plaintiff that ULINE decided to terminate his employment because he made misrepresentations concerning the October 17, 2023 workplace injury.

33.     At all times, ULINE's purported rationale for Plaintiff's termination – that he had misrepresented his work-injury claim against it – was nothing more than a false pretext to mask ULINE's true discriminatory and/or retaliatory motives. In truth, Plaintiff had never misrepresented his work-injury claim and ULINE knew such. In truth, ULINE made the decision to wrongfully terminate Plaintiff on the basis of his disabilities, in retaliation for his requests for reasonable accommodations, and/or on the basis of the belief that Plaintiff would continue to be disabled for the indefinite future and continue to need reasonable accommodations.

34.     In addition to the unlawful termination of Plaintiff, at all times throughout Plaintiff's employment and through the present date, ULINE maintains an unlawful policy and/or practice which requires that its warehouse employees who are injured at work immediately submit to a drug test without any evidence, or any attempt to gather evidence, which in any way demonstrates that the employee was intoxicated at the time of the incident. Uline does this uniformly, even when it has no reasonable suspicion that its employees are under the influence of any unlawful substances. At all times, ULINE's policies that its employees immediately submit to a drug and/or urine test through Onsite following a workplace injury was and is unlawful for each of the following reasons:

A. ULINE automatically and uniformly requires employees to submit to drug and/or urine testing following each and every workplace injury without taking into account the specific circumstances pertaining to that employee's workplace injury;

B. ULINE through Onsite automatically and uniformly requires employees to submit to drug and/or urine testing following each and every workplace injury without any requirement that there be reasonable suspicion or any evidence that the injured employee was actually intoxicated at the time of the incident;

C. ULINE through Onsite demands that, after suffering a workplace injury, employees submit to a drug and/or urine test without any evidence, or any attempt by ULINE to gather evidence, which may demonstrate that the employee was intoxicated at the time of the injury; and

D. ULINE through Onsite demands that, after suffering a workplace injury, employees must submit to a drug and/or urine test without any evidence, or any attempt by ULINE to gather evidence, which may demonstrate that the employee's drug or alcohol use, even if it existed, could have contributed to the workplace injury and/or that the incident would not have occurred regardless of whether that employee was intoxicated at the time.

E. ULINE also randomly drug tests its warehouse employees with zero reasonable suspicion for drug or alcohol use on the job.

35.    In addition to ULINE's drug and urine testing being *per se* unlawful, so were ULINE's motives in conducting such unlawful tests. At all times, ULINE created their policy requiring such testing for an unlawful, discriminatory, and/or retaliatory purpose.

36.    In truth, ULINE maintained its unlawful drug and/or urine testing policy for the purposes of obtaining pretextual grounds to wrongfully terminate injured employees, whom ULINE believed would become disabled and/or whom ULINE already knew to be disabled as a result of a previous workplace injury. Thus, at all times, ULINE enacted this illegal scheme as a mechanism to unlawfully and/or wrongfully terminate employees, due to their actual and/or perceived disabilities so that ULINE could avoid having to ever reasonably accommodate such employees.

37.    In accordance with ULINE's unlawful testing policy, aided and abetted by Onsite, Plaintiff was forced by Defendants to take a drug test with Onsite as a condition of his continued employment despite that, at the time of his injury, Defendants did not possess good cause or reasonable suspicion that Plaintiff was under the influence of any intoxicant or that intoxication in any way could have caused the specific injury Plaintiff suffered. As such, in addition to failing to

1  reasonably accommodate Plaintiff and wrongfully terminating Plaintiff, Defendants also

2  unlawfully required Plaintiff to submit to a drug test with Onsite and a medical evaluation with

3  Carlos present in violation of HIPAA and other rights.

4       38.    Due to Plaintiff's privacy rights, at no time, without the gathering of specific

5  objective facts that create a rational inference that Plaintiff was intoxicated, was Plaintiff required

6  under California law to submit to Defendants' demand for an immediate drug test. Thus, at all

7  times, Defendants' demand that Plaintiff submit to a drug test violated Plaintiff's rights to privacy

8  as provided to him by Article 1, § 1 of the California Constitution, other California statutes

9  protecting the privacy of medical information and relevant legal decisions by the California

10  Occupational Safety and Health Administration.

11       39.    At all times, Defendants' demand that Plaintiff submit to an unlawful drug and/or

12  urine test immediately after suffering his workplace injury amounted to an unlawful inquiry into

13  Plaintiff's protected and confidential medication information as well. At no time did either ULINE

14  or Onsite require such drug testing of Plaintiff, and/or implement such drug testing on Plaintiff, for

15  the purpose of determining his fitness to perform his job duties. As a result, at no time did

16  Defendants have any lawful rationale for inquiring into the medical status and/or medical

17  information of Plaintiff through their post-workplace injury drug and/or urine test.

18       40.    Because the demand that Plaintiff submit to a drug test lacked the requisite good

19  cause necessary to demand such a test under California law, and, therefore, was unlawful,

20  Defendants' conduct amounted to an unlawful invasion of Plaintiff's privacy and ULINE's medical

21  inquiry was unlawful. In truth, ULINE's demand that Plaintiff submit to a drug test was simply an

22  act of discrimination and/or retaliation, which Onsite aided and abetted as an accomplice. In

23  demanding that Onsite perform an unlawful drug test of the Plaintiff, ULINE sought any

24  justification it could find to unlawfully discriminate against and terminate Plaintiff for being

25  disabled and/or requesting reasonable accommodations. However, because Defendants' urine test

26  of Plaintiff did not show a presence of any substances in Plaintiff's system, ULINE had to find a

27

28

basis, legitimate or otherwise, to terminate Plaintiff, and it fabricated an investigation into his workplace injury claim.

41.    At all times, Defendants' conduct, as described above, was enacted maliciously and in total disregard and oppression of Plaintiff's and other employees' rights and welfare. As a result of these circumstances, Plaintiff has been damaged economically by the loss of both his current and future employment with ULINE. Plaintiff has also been damaged emotionally and physically through Defendants' unlawful conduct. The full extent of Plaintiff's damages will be subject to a matter of proof at trial.

## **FIRST CAUSE OF ACTION**

### **DISABILITY DISCRIMINATION IN VIOLATION OF**

FEHA (Gov't Code § 12940(A))

(Against ULINE, Onsite, and DOES 1-20)

42.    As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

43.    FEHA, at Government Code § 12940(a), makes it unlawful for an employer, because of the physical or mental disability of any person, to bar or discharge the person from employment or discriminate against the person in compensation, terms, conditions, or privileges of employment.

44.    Plaintiff, at all times relevant hereto, was an "employee" of Defendants, as defined by Government Code § 12926(c), for the purposes of Government Code § 12940(a).

45.    At all applicable times mentioned in this Complaint, Defendants were employers within the meaning and provisions relating to employers under FEHA. (Cal. Gov't. Code §12926(d).) They also jointly employed Plaintiff by virtue of sharing control over the terms and conditions of his employment, including without limitation the ultimate decision of whether he would be allowed to have employment at all.

46.     FEHA, at Government Code §12940(i), also makes it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under" the FEHA.

47.     FEHA further defines "disability" as including a record or history of a disorder, condition, or impairment which is known to the employer or other entity covered by FEHA, and also includes being "regarded or treated by the employer" as having an impairment or condition that makes or will make achievement of a major life activity difficult, including physical, mental, social, and working activities. (Cal. Gov't. Code §§ 12926(j)(3)-(5); Cal. Gov't. Code §12926(m).)

48.     California law, as expressly set forth in its constitutional and statutory provisions, prohibits employment discrimination because an employee suffers from a disability, has a record of a disability, or is perceived as suffering from a disability.

49.     At all times relevant, Plaintiff suffered from a physical disability or a perceived physical disability, as defined by the FEHA at 12926(m). Those physical disabilities and/or diagnoses included but are not limited to: (i) back pain; (ii) herniated disks; (iii) back flare-ups; and (iv) lower back strain.

50.     Plaintiff is a natural person with a physical disability, and/or perceived disability, or actual or perceived potential disability as defined in California Government Code section 12926(m). Upon information and belief, Plaintiff's physical disability affected his neurological and musculoskeletal systems, and/or other systems. Further, the aforementioned conditions limited Plaintiff's physical, mental, and social life activities as well as the major life activity of working. This entitles Plaintiff to protection under the FEHA.

51.     Defendants knew or reasonably should have known of Plaintiff's actual physical disability and/or knew that he had a record of disability, as defined by the FEHA. Alternatively, Defendants regarded or perceived Plaintiff as having or having had a condition that currently has no disabling effect but may become an impairment in the future that limits Plaintiff's ability to participate in major life activities.

52. At all times relevant, Plaintiff was qualified for and could perform the essential functions of his position with Defendants, with or without reasonable accommodation. At all times relevant to this action, Plaintiff met at least satisfactory performance expectations. Following his termination, Plaintiff was qualified to perform one or more open, vacant and funded positions with Defendant as well as the former Facilities Custodian position.

53. Plaintiff's disabilities were a substantial motivating factor underlying Defendants' adverse employment actions, including but not limited to:

- Terminating Plaintiff's employment;
- Suspension of his employment pending a sham investigation;
- Not allowing Plaintiff to have modified work-duty;
- Failing to engage in a timely and good faith discussion and interactive process;
- Withdrawing and/or revoking basic and obvious reasonable accommodations that had been previously approved, granted, and/or provided;
- Delaying or denying Plaintiff's reasonable accommodations;
- Requiring that he submit to an unlawful urine drug test;
- Requiring that he submit to health evaluation in front of Carlos, a ULINE employee;
- Other adverse actions that will be identified up to and including the time of trial.

54. As a result of Defendants' unlawful discrimination against Plaintiff, Plaintiff has suffered and continues to suffer (a) substantial humiliation, serious mental anguish, and emotional and physical distress; and (b) loss of past and future earnings, status and future status, and employment benefits and opportunities, on account of which Plaintiff is entitled to compensatory damages in an amount to be established according to proof at trial. Plaintiff claims such amount together with prejudgment interest pursuant to Civil Code § 3287or 3288 and any other applicable provision of law.

55.     As a further direct and proximate result of Defendants' violation of Government Code §12940(a), Plaintiff has been compelled to retain the services of counsel and will continue to incur legal fees and costs.  Plaintiff requests an award of such attorneys' fees and costs pursuant to Government Code §12965(b).

56.     The medical condition/disability discrimination committed by Defendants was intentional, malicious, wanton, and oppressive, with a conscious disregard for Plaintiff's rights and with the intent to vex, injure, punish, and annoy Plaintiff so as to cause Plaintiff the injuries alleged herein. Such acts amount to oppression and malice, as described in Civil Code § 3294.

57.     Plaintiff is therefore entitled to punitive or exemplary damages in an amount sufficient to punish and make an example out of. Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to California Government Code § 12965(b).

## SECOND CAUSE OF ACTION

### FAILURE TO PREVENT DISCRIMINATION

(Gov't Code § 12940(K))

(Against ULINE, Onsite, and DOES 1-20)

58.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

59.     Defendants were at all material times Plaintiff's "employers," as defined by Government Code § 12926(d), for the purposes of Government Code § 12940(k), which makes it an unlawful employment practice for an employer ". . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

60.     "The employer's duty to prevent harassment and discrimination is affirmative and mandatory." (*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035.)

61.    As described more fully elsewhere herein, Plaintiff was subjected to unlawful discrimination in the course of Plaintiff's employment with Defendants and their employees thereof.

62.    Defendants failed to take all reasonable steps necessary to prevent the discrimination suffered by Plaintiff, in violation of Government Code § 12940(k), and such failure was a substantial factor in causing the harm to Plaintiff alleged herein.

63.    Further, employers have an affirmative duty to create a workplace environment that is free from employment practices prohibited by the FEHA. In addition to distributing the Department's DFEH-185 brochure on sexual harassment, or an alternative writing that complies with Government Code section 12950, an employer must develop a harassment, discrimination, and retaliation prevention policy that:

    a.  Is in writing;

    b.  Lists all current protected categories covered under the FEHA;

    c.  Indicates that the law prohibits coworkers and third parties, as well as supervisors and managers, with whom the employee comes into contact from engaging in conduct prohibited by the FEHA;

    d.  Creates a complaint process to ensure that complaints receive:

        i.    an employer's designation of confidentiality, to the extent possible;

        ii.   a timely response;

        iii.  impartial and timely investigations by qualified personnel;

        iv.   documentation and tracking for reasonable progress;

        v.    appropriate options for remedial actions and resolutions; and

        vi.   timely closures.

    e.  Provides a complaint mechanism that does not require an employee to complain directly to his or her immediate supervisor, including, but not limited to, the following:

    i.      direct communication, either orally or in writing, with a designated company representative, such as a human resources manager, EEO officer, or other supervisor; and/or

    ii.     a complaint hotline; and/or

    iii.    access to an ombudsperson; and/or

    iv.    identification of the Department and the U.S. Equal Employment Opportunity Commission (EEOC) as additional avenues for employees to lodge complaints.

f.   Instructs supervisors to report any complaints of misconduct to a designated company representative, such as a human resources manager, so Defendant can try to resolve the claim internally;

g.   Indicates that when an employer receives allegations of misconduct, it will conduct a fair, timely, and thorough investigation that provides all parties appropriate due process and reaches reasonable conclusions based on the evidence collected;

h.   States that confidentiality will be kept by the employer to the extent possible, but not indicate that the investigation will be completely confidential;

i.   Indicates that if at the end of the investigation misconduct is found, appropriate remedial measures shall be taken; and

j.   Makes clear that employees shall not be exposed to retaliation as a result of lodging a complaint or participating in any workplace investigation.

64.   Dissemination of the policy must include one or more of the following methods:

a.   Printing and providing a copy to all employees with an acknowledgment form for the employee to sign and return;

b.   Sending the policy via e-mail with an acknowledgment return form;

c.   Posting current versions of the policies on a company intranet with a tracking system ensuring all employees have read and acknowledged receipt of the policies;

d.   Discussing policies upon hire and/or during a new hire orientation session; and/or

e.  Any other way that ensures employees receive and understand the policies.

65.  Any employer whose workforce at any facility or establishment contains 10 percent or more of persons who speak a language other than English as their spoken language shall translate the retaliation/discrimination policy into every language that is spoken by at least 10 percent of the workforce.

66.  Defendant knew or should have known of the discrimination and/or harassment and/or retaliation occurring on the basis of Plaintiff's physical disability, perceived physical disability, or perceived or actual potential physical disability, and retaliation of Plaintiff based upon his engagement in protected activity, including but not limited to requesting accommodations under the FEHA.

67.  In engaging in the conduct described above, Defendant failed to engage in any reasonable steps to prevent disability discrimination from occurring in the workplace. Defendant failed to provide Plaintiff a reasonable accommodation and failed to engage in the interactive process. This ultimately resulted in Plaintiff's unlawful termination. Moreover, Plaintiff is informed and believes, and thereupon alleges, that Defendant failed to comply with the requirements set forth in the preceding paragraphs.

68.  Defendants authorized and ratified the wrongful acts of their agents and employees, knew in advance that their agents and employees were likely to commit such acts and employed them with conscious disregard of the rights or safety of others, and/or their officers, directors, or managing agents were themselves guilty of oppression and malice.

69.  In engaging in the aforementioned conduct, Defendants aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of Government Code § 12940(i) and the announced policy of this State against such practices.

70.  As a result of Defendants' failure to prevent the unlawful discrimination described herein, Plaintiff has suffered and continues to suffer (a) substantial humiliation, serious mental anguish, and emotional and physical distress; and (b) loss of past and future earnings, status and future status, and employment benefits and opportunities, on account of which Plaintiff is entitled

to compensatory damages in an amount to be established according to proof at trial. Plaintiff claims such amount together with prejudgment interest pursuant to Civil Code §§ 3287or 3288 and any other applicable provision of law. These failures by Defendant constituted unlawful employment discrimination, and the failure to prevent that discrimination was a substantial factor in causing damage and injury to Plaintiff.

71.    As a further direct and proximate result of Defendants' violation of Government Code §12940(k), Plaintiff has been compelled to retain the services of counsel and will continue to incur legal fees and costs. Plaintiff requests an award of such attorneys' fees and costs pursuant to Government Code §12965(b).

72.    The failure of Defendants to prevent the unlawful discrimination suffered by Plaintiff was intentional, malicious, wanton, and oppressive, with conscious disregard for Plaintiff's rights and with the intent to vex, injure, punish, and annoy Plaintiff so as to cause Plaintiff the injuries alleged herein. Such acts amount to oppression and malice, as described in Civil Code § 3294. Plaintiff is therefore entitled to punitive or exemplary damages in an amount sufficient to punish and make an example out of Defendants.

73.    Plaintiff requests interest, attorneys' fees, costs, damages, declaratory and injunctive relief, and other remedies in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### FAILURE TO ENGAGE IN A GOOD FAITH INTERACTIVE PROCESS

(Gov't Code § 12940(n))

(Against ULINE and DOES 1-20)

74.    As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

75.    FEHA, at Gov. Code §12940(n) and §12926.1(e), requires an employer to engage in a meaningful, good faith, and timely interactive process with its disabled employee to determine a reasonable accommodation with respect to the job, and with respect to the time and manner in which his job functions are to be performed.

76.    FEHA, at Government Code §12940(i), also makes it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under" the FEHA.

77.    At all times relevant, Plaintiff suffered from an actual physical disability or a perceived physical disability, as defined by the FEHA at 12926(m). Those physical disabilities and/or diagnoses included but are not limited to: (i) back pain; (ii) herniated disks; (iii) back flare-ups; and (iv) lower back strain.

78.    Plaintiff is a natural person with a physical disability, and/or perceived disability, or actual or perceived potential disability as defined in California Government Code section 12926(m). Upon information and belief, Plaintiff's physical disability affected Plaintiff's, neurological, musculoskeletal, and other bodily systems. Further, the aforementioned conditions limited Plaintiff's physical, mental, and social activities and working. This entitles Plaintiff to protection under the FEHA. Alternatively, Defendants regarded or perceived Plaintiff as having or having had a condition that currently has no disabling effect but may become an impairment in the future that limits Plaintiff's ability to participate in major life activities.

79.    Once Defendants became aware of Plaintiff's actual or perceived need for accommodation, Defendants' obligation to engage in a good faith interactive process with Plaintiff was triggered and required Defendants to determine Plaintiff's entitlement to and the availability of reasonable accommodations, including but not limited to the accommodations listed in this complaint. That obligation and duty continued as Plaintiff's needs for further accommodations arose or changed, as his disability bettered or worsened, and as the perceived hardship or reasonableness of Plaintiff's accommodations changed as perceived by Defendants.

80.     Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, were aware of Plaintiff's disability, perceived disability, and/or perceived or actual potential disability. Accordingly, Defendants, and each of them, had an affirmative duty pursuant to California Government Code, Section 12940(m) to accommodate Plaintiff. Defendants failed to engage in a good-faith interactive process with Plaintiff as required by California Government Code, Section 12940(n) to determine a reasonable accommodation.

81.     Plaintiff performed his job successfully, despite his disabilities. Rather than engaging and/or re-engaging in any meaningful interactive process, Defendants summarily terminated Plaintiff. Prior to his termination, Defendants never told Plaintiff his job was in jeopardy. Further, Defendants failed to acknowledge Plaintiff, his injuries, or reasonable accommodations for him. In doing so, Defendants failed in their duty to interact with Plaintiff in good faith to reasonably accommodate Plaintiff's disability, even though his disability could have been readily accommodated.

82.     At all times relevant, Plaintiff was qualified for and could perform the essential functions of his position with Defendants, with or without reasonable accommodation.

83.     Plaintiff's disabilities were a substantial motivating factor underlying Defendants' adverse employment actions, including but not limited to:

- Terminating Plaintiff's employment;
- Suspension of his employment pending a sham investigation;
- Not allowing Plaintiff to have modified work-duty;
- Failing to engage in a timely and good faith discussion and interactive process;
- Withdrawing and/or revoking basic and obvious reasonable accommodations that had been previously approved, granted, and/or provided;
- Delaying or denying Plaintiff's reasonable accommodations;

- Requiring that he submit to an unlawful urine drug test;
- Requiring that he submit to health evaluation in front of Carlos, a ULINE employee;
- Other adverse actions that will be identified up to and including the time of trial.

84.    The above acts and omissions of Defendants, and each of them, constitute discrimination based on Plaintiff's physical disability, perceived disability, or actual or perceived potential disability and accordingly violate Government Code Section 12940(n) and other provisions of the FEHA.

85.    Defendants' actions and conduct violates FEHA, and as a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, injury, including lost wages and benefits, attorneys' fees, costs of suit and other pecuniary loss not presently ascertained, the exact amount of which will be proved at trial.

86.    As a result of Defendants' unlawful discrimination against Plaintiff, Plaintiff has suffered and continues to suffer (a) substantial humiliation, serious mental anguish, and emotional and physical distress; and (b) loss of past and future earnings, status and future status, and employment benefits and opportunities, on account of which Plaintiff is entitled to compensatory damages in an amount to be established according to proof at trial. Plaintiff claims such amount together with prejudgment interest pursuant to Civil Code § 3287 or 3288 and any other applicable provision of law.

87.    Defendants authorized and ratified the wrongful acts of their agents and employees, knew in advance that their agents and employees were likely to commit such acts and employed them with conscious disregard of the rights or safety of others, and/or their officers, directors, or managing agents were themselves guilty of oppression and malice.

88.    In engaging in the aforementioned conduct, Defendants aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of Government Code § 12940(n) and the announced policy of this State against such practices.

89.     As a result of Defendants' failure to engage in the interactive process of accommodating Plaintiff's disability, as described herein, Plaintiff has suffered and continues to suffer (a) substantial humiliation, serious mental anguish, and emotional and physical distress; and (b) loss of past and future earnings, status and future status, and employment benefits and opportunities, on account of which Plaintiff is entitled to compensatory damages in an amount to be established according to proof at trial. Plaintiff claims such amount together with prejudgment interest pursuant to Civil Code §§ 3287 or 3288 and any other applicable provision of law.

90.     As a further direct and proximate legal result of Defendants' acts and conduct in violation of Government Code §12940(n), Plaintiff has been caused to and did suffer, and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, and depression. Plaintiff, as a result, has been compelled to retain the services of counsel and will continue to incur legal fees and costs. Plaintiff requests an award of such attorneys' fees and costs pursuant to Government Code §12965(b). Additionally, pursuant to Section 12965 of the California Government Code, as a result of Defendants' discrimination, Plaintiff is entitled to recover damages for economic and physical harm, emotional distress, and attorneys' fees.

91.     The failure of Defendants to engage in the interactive process of accommodating Plaintiff's disability was intentional, malicious, wanton, and oppressive, with conscious disregard for Plaintiff's rights and with the intent to vex, injure, punish, and annoy Plaintiff so as to cause Plaintiff the injuries alleged herein. Such acts amount to oppression and malice, as described in Civil Code § 3294. Plaintiff is therefore entitled to punitive or exemplary damages in an amount sufficient to punish and make an example out of Defendants.

///

///

**FOURTH CAUSE OF ACTION**

**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**

(Gov't Code § 12940(m))

(Against ULINE and DOES 1-20)

92.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

93.     It is unlawful for an employer to fail to provide a reasonable accommodation to an employee with a known disability, provided that accommodation does not cause the employer undue hardship. (Cal. Govt. Code § 12940(m).) Defendants, and each of them, violated the FEHA by, among other things, failing to provide a reasonable accommodation for Plaintiff's physical disability, perceived physical disability, or actual or perceived potential disability. Plaintiff performed his job successfully, despite his disabilities, without any hardship (much less an "undue" hardship within the meaning of FEHA).

94.     Defendants are employers within the meaning of and subject to Government Code § 12940, et seq.

95.     Defendants knew of Plaintiff's actual and/or perceived disability, and yet Defendants failed and refused to make reasonable accommodation for Plaintiff's known disability and/or refused to continue accommodations, resulting in Plaintiff's termination.

96.     At all times relevant, Plaintiff suffered from an actual and/or perceived physical disability as defined by the FEHA at 12926(m). Those physical disabilities and/or diagnoses included but are not limited to: (i) back pain; (ii) herniated disks; (iii) back flare-ups; and (iv) lower back strain.

97.     Plaintiff is a natural person with a physical disability, and/or perceived disability, or actual or perceived potential disability as defined in California Government Code section 12926(m). Upon information and belief, Plaintiff's physical disability affected Plaintiff's

1   neurological and musculoskeletal systems. Further, the aforementioned conditions limited

2   Plaintiff's physical, mental, and social activities and working. This entitles Plaintiff to protection

3   under the FEHA.

4        98.    Defendants perceived that Plaintiff suffered from a physical disability as defined by

5   the FEHA. Alternatively, Defendants regarded or perceived Plaintiff as having or having had a

6   condition that currently has no disabling effect but may become an impairment in the future that

7   limits Plaintiff's ability to participate in major life activities.

8        99.    On information and belief, had Defendants engaged in a good-faith interactive

9   process with Plaintiff and determined that additional and/or modified reasonable accommodations

10  were actually needed for Plaintiff to continue to perform the essential functions of his job at a

11  satisfactory level, the following reasonable accommodations would have included, but would not

12  have been limited:

13       • Allowing Plaintiff to have modified work-duty;

14       • Allowing Plaintiff to have a shorter work shift;

15       • Delegating and assigning work tasks among other employees, including but not

16         limited to other Facilities Custodians while Plaintiff was taking time off work to

17         recover from his workplace-injury;

18       • Providing Plaintiff with occasional assistance from other co-workers to lift heavy

19         objects, or providing new and/or existing equipment to Plaintiff to aid in the

20         moving and/or lifting of heavy objects, to the extent required;

21       • Permitting Plaintiff to take occasional rest and/or stretch breaks;

22       • Placing Plaintiff on a paid and/or unpaid leave of absence to allow for an effective

23         and/or extended interactive process, and/or to allow for additional employment

24         vacancies to open up so as to allow for Plaintiff's reassignment;

25       • Transferring Plaintiff to a vacant position that would have accommodated him and

26         for which he was otherwise qualified; and

27

28

- Providing Plaintiff with intermittent leave from work to attend medical appointments as needed.

100.    Plaintiff will identify other reasonable accommodations that would have been available to Plaintiff up to and including the time of trial.

101.    On information and belief, had Defendants engaged in a good-faith interactive process with Plaintiff and still determined that no reasonable accommodations were available for Plaintiff's current position, a reassignment accommodation was available to Plaintiff. Those re-assignment accommodations include but are not limited to other facilities custodian positions and clerical positions, and part-time or substitute facilities custodian positions. Plaintiff will identify other reassignment accommodations that would have been available to Plaintiff up to and including the time of trial.

102.    Plaintiff was harmed as a result of Defendants' adverse actions, and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

103.    Defendants are therefore liable for the discrimination suffered by Plaintiff.

104.    Such actions are unlawful and discriminatory in violation of Government Code section 12940 *et. seq.*, and have resulted in damages and injury to Plaintiff, including both general and special damages in an amount to be proven at trial.

105.    Plaintiff's disabilities were a substantial motivating factor underlying Defendants' adverse employment actions, including but not limited to:

- Terminating Plaintiff's employment;
- Suspension of his employment pending a sham investigation;
- Not allowing Plaintiff to have modified work-duty;
- Failing to engage in a timely and good faith discussion and interactive process;
- Withdrawing and/or revoking basic and obvious reasonable accommodations that had been previously approved, granted, and/or provided;
- Delaying or denying Plaintiff's reasonable accommodations;

- Requiring that he submit to an unlawful urine drug test;
- Requiring that he submit to health evaluation in front of Carlos, a ULINE employee;
- Other adverse actions that will be identified up to and including the time of trial.

106.    The above acts and omissions and Defendants, and each of them, constitute discrimination based on Plaintiff's physical disability, perceived disability, or actual or perceived potential disability and accordingly violate Government Code Section 12940(m) and other provisions of FEHA.

107.    Defendants' conduct violated FEHA, and as a direct, foreseeable, and proximate result of Defendants' conduct, including its willful, knowing, and intentional violation(s) of FEHA, has caused Plaintiff to suffer, and to continue to suffer emotional and physical distress, humiliation, shame, despair, embarrassment, depression, physical and mental pain and suffering and anguish, loss of earnings, future loss of earnings, loss of status and future status, loss of other employment benefits and job opportunities, attorneys' fees, costs of suit and other pecuniary loss not presently ascertained, all to their damage in a sum to be established according to proof at trial. Plaintiff's claims amount as damages together with prejudgment interest pursuant to Civil Code § 3287 and any other provision of law providing for prejudgment interest.

108.    Plaintiff is entitled to general and compensatory damages in amounts in excess of the jurisdictional limits of this court, according to proof at trial.

109.    As a direct and proximate result of Defendants' violation of Government Code §12940(a), Plaintiff has been compelled to retain the services of counsel and will continue to incur legal fees and costs. Plaintiff requests that attorneys' fees be awarded pursuant to Government Code §12965.

110.    Additionally, Defendants engaged in this conduct with malice, oppression, and/or fraud, thereby entitling Plaintiff to an award of punitive damages.

**FIFTH CAUSE OF ACTION**

**RETALIATION IN VIOLATION OF FEHA**

(Gov't Code § 12940(h))

(Against ULINE and DOES 1-20)

111.    As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

112.    Government Code section 12940(h) provides that it is unlawful for an employer to retaliate against a person "because the person has opposed any practices forbidden under [Government Code sections 12900 through 12966] or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

113.    Defendants retaliated against Plaintiff because Plaintiff incurred a workplace-injury. Defendants were aware that Plaintiff had suffered a workplace-injury while conducting his job duties. When Plaintiff suffered this injury, Uline placed him on administrative leave, and ultimately, wrongfully terminated Plaintiff's employment as a Facilities Custodian because of he suffered a workplace-injury.

114.    In exercising his rights under FEHA, Plaintiff engaged in a legally protected activity by informing Defendants of his disabilities and by requesting reasonable accommodations to treat and/or recover from his disabilities.

115.    Uline acting at least partially in direct retaliation for Plaintiff engaging in these protected activities as described above, retaliated against Plaintiff by placing him on administrative leave, refusing to accommodate his disability, by refusing to engage in a good-faith interactive process with him, and/or by wrongfully terminating him from his employment with it.

116.    Defendant decided to retaliate against Plaintiff as a result of his protected activities in violation of Government Code Section 12940(h) by engaging in the adverse employment actions described herein, which adversely and materially affected Plaintiff's employment and ultimately resulted in Plaintiff's termination.

117.    Plaintiff's notification of his workplace-injury, was a substantial motivating factor for Employer Defendants' adverse employment actions, causing Plaintiff harm.

118.    Defendants' conduct was a substantial factor in causing Plaintiff harm. There was a causal connection between Plaintiff's protected activity and the adverse employment actions.

119.    As a direct and proximate result of the acts of Defendant, and each of them, as alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other economic damages and has necessarily expended sums in the treatment of physical and mental injuries, in an amount to be ascertained at the time of trial.

120.    As a direct and proximate result of the acts of Defendant as alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the physical, emotional injuries sustained by Plaintiff as a result of said Defendant's acts in an amount to be ascertained at the time of trial.

121.    As a direct and proximate result of the acts of Defendant, and each of them, as alleged above, Plaintiff has suffered emotional distress and has been generally damaged in an amount to be ascertained at the time of trial.

122.    As a direct and proximate result of the acts of Defendant, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorneys' fees and costs in an amount to be proven at the time of trial. Pursuant to the provisions of Gov. Code § 12940(h), Plaintiff is entitled to the reasonable value of such attorneys' fees and costs. Plaintiff requests that attorneys' fees be awarded pursuant to Government Code §12940.

123.    The conduct of Uline in retaliating against Plaintiff as a result of his engaging in protected activities, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Uline that Plaintiff would suffer damages in the

1 | foreseeable future. Plaintiff is informed and believes, and based thereon alleges, that Uline's

2 | conduct against Plaintiff was done with an intent to cause injury to the Plaintiff.

3 |      124.    Additionally, Defendants engaged in this conduct with malice, oppression, and/or

4 | fraud, thereby entitling Plaintiff to an award of punitive damages pursuant to California

5 | Government Code §§12965 & 12970.

6

7 | **SIXTH CAUSE OF ACTION**

8 | **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

9 | (Against ULINE and DOES 1-20)

10 |      125.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

11 | allegations contained in this complaint, and incorporates them by reference into this cause of action

12 | as though fully set forth herein, excepting those allegations which are inconsistent with this cause

13 | of action.

14 |      126.    Irrespective of any employment contract, the Employer Defendants' right to

15 | discharge Plaintiff was subject to limits imposed by public policy of the State of California.

16 |      127.    It is settled that an employer's discharge of an employee in violation of a

17 | fundamental public policy embodied in a constitutional or statutory provision gives rise to a tort

18 | action for wrongful termination in violation of public policy.

19 |      128.    Plaintiff's employment was suddenly terminated after Defendants were made

20 | aware of his workplace-injury, his disability, and the results of an internal investigation of

21 | Plaintiff's workplace-injury were received.

22 |      129.    Such actions are unlawful in violation of the laws and public policy of the State of

23 | California, and have resulted in damages and injury to Plaintiff, including general damages in an

24 | amount to be proven at trial.

25 |      130.    As a direct and proximate result of said wrongful acts by Defendants, Plaintiff has

26 | suffered and will continue to suffer substantial losses in earnings and other employment benefits,

27 | along with other incidental and consequential damages and losses, all in an amount to be proven

28

1  at the time of trial.  Plaintiff claims such amount as damages together with prejudgment interest

2  pursuant to Civil Code § 3287 and any other provision of law providing for prejudgment interest.

3      131.    As direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered

4  and will continue to suffer emotional distress, loss of earnings, future loss of earnings, loss of

5  status and future status, loss of other employment benefits and job opportunities all to his damage

6  in a sum to be established according to proof at trial.

7      132.    As a direct and proximate result of said wrongful acts by Defendants, Plaintiff has

8  incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be

9  established according to proof at trial.

10     133.    Additionally, Defendants engaged in this conduct with malice, oppression, and/or

11 fraud, thereby entitling Plaintiff to an award of punitive damages.

12

13                          **SEVENTH CAUSE OF ACTION**

14          **VIOLATION OF CONSTITUTIONAL RIGHT TO PRIVACY**

15                        (Against ULINE, Onsite, and DOES 1-20)

16     134.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

17 allegations contained in this complaint, and incorporates them by reference into this cause of action

18 as though fully set forth herein, excepting those allegations which are inconsistent with this cause

19 of action.

20     135.    At all times while employed by Employers, Plaintiff had a reasonable expectation

21 of privacy in the workplace and related to his employment with Employers as provided to his by

22 Article 1, §1 of the California Constitution. Such privacy rights included Plaintiff's reasonable

23 expectation that, while employed by Employers, Plaintiff be free from intrusive, unwarranted drug

24 testing, including urine tests, conducted without reasonable suspicion based on known specific,

25 objective facts which implicated that Plaintiff had been intoxicated while at work and/or while

26 driving a company vehicle. Such a test, or request to take such a test, would invade Plaintiff's

27 privacy rights by potentially revealing whether Plaintiff suffered from any chronic medical

28

conditions, whether Plaintiff suffered from any genetic disorders, whether Plaintiff took any medications and/or whether Plaintiff suffered from any sexually transmitted diseases, none of which would have any relevance to Plaintiff's employment nor of which any third party, including Employer or Onsite, had a right to know.

136. Throughout Plaintiff's employment, Employer maintained a uniform unlawful policy, procedure and/or practice in California that required Employer's employees to submit to an immediate, unlawful drug test with Onsite whenever an employee suffered a workplace injury, regardless of whether Employer or Onsite had any reasonable suspicion that the employee was intoxicated at work or whether there existed any evidence demonstrating that an employee was intoxicated at work. At all times, these uniform policies, procedures and practices, which failed to take into account the unique circumstances of the employee's workplace injury and failed to take into account the absence of any evidence implying intoxication, was unlawful under California law because such practices amount to an intentional violation of the privacy rights of injured or disabled employees as provided to them under Article 1, §1 of the California Constitution.

137. During Plaintiff's employment, Defendants intentionally intruded on and violated Plaintiff's privacy rights by insisting that Plaintiff submit to an unlawful drug and/or urine test with Onsite. At the time of such an unnecessarily invasive demand, neither Employer nor Onsite had gathered any specific, objective evidence that Plaintiff was intoxicated at work or that, even if Plaintiff had been, Plaintiff's alleged intoxication had any influence over Plaintiff's workplace injury or the car accident.

138. At all times, Defendants' demanded drug test was highly intrusive and offensive to a reasonable person, especially in light of Plaintiff's reasonable expectation of privacy as Employer's employee and under Plaintiff's specific circumstances. This is especially true given that Plaintiff was subjected to a drug test immediately following a workplace-injury and even though neither Employer nor Onsite had gathered any facts demonstrating that Plaintiff was in any manner intoxicated at the time he incurred his workplace injuries and, thus, failed to gather any information to warrant said drug test under California law. Therefore, Defendants' forceful drug

test amounted to an unlawful invasion of Plaintiff's privacy rights. Such an arbitrary and unnecessary invasion of Plaintiff's privacy rights directly led to the disclosure of private and/or potentially embarrassing medical information which would have not otherwise been revealed, thus was a substantial factor in causing Plaintiff's harm.

139.    At all times throughout Plaintiff's employment, Defendants knew or should have known that their unlawful drug tests were part of a scheme to invade injured and/or disabled employees' privacy rights, and/or to rid Employer of injured and disabled employees whom Employer knew Employer would have to reasonably accommodate at the time or in the immediate future.

140.    As a direct, legal and/or proximate result of the aforesaid acts of Defendants, Plaintiff has suffered actual, consequential, and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

141.    As a direct, legal and/or proximate result of Defendants' conduct, Plaintiff has sustained and continues to suffer emotional distress and related emotional and physical trauma, pain and suffering, personal inconvenience, sickness, and illness, etc. all to Plaintiff's damage in an amount to be shown according to proof.

142.    The conduct of Defendants in invading Plaintiff's privacy rights subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants that Plaintiff would suffer damages in the foreseeable future. Plaintiff is informed and believes, and based thereon alleges, that Defendants' conduct against Plaintiff was done with an intent to cause injury to the Plaintiff.

143.    This action will result in the enforcement of the constitutional right to privacy, which is an important right affecting the public interest, and the potential invalidation of an unlawful policy affecting thousands of employees. Thus, this action will confer a significant benefit on a

1    large class of persons, given the size of Employer's workforce. As a result, Plaintiff's attorneys'

2    fees incurred while pursuing such claims should not, in the interest of justice, be paid out of the

3    recovery. Accordingly, Plaintiff has incurred and continues to incur legal expenses and attorneys'

4    fees which Plaintiff is entitled to recover pursuant to California Code of Civil Procedure § 1021.5.

5        144.    Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in,

6    authorized or ratified by officers, directors or managing agents of the corporation and/or was the

7    result of the application of unlawful, malicious or oppressive policies and procedures.  As a

8    consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to

9    an award of punitive damages in a sum to be shown according to proof at trial.

10

11                        **EIGHTH CAUSE OF ACTION**

12            **UNLAWFUL MEDICAL INQUIRY IN VIOLATION OF FEHA**

13                    (Against All Defendants and DOES 1-20)

14        145.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

15    allegations contained in this complaint, and incorporates them by reference into this cause of action

16    as though fully set forth herein, excepting those allegations which are inconsistent with this cause

17    of action.

18        146.    Under the California Fair Employment and Housing Act, through California

19    Government Code § 12940(e) and California Code of Regulations, Title 2, §§ 11065 and 11071,

20    employers may condition an employee's continued employment on the result of a medical

21    examination or inquiry only where such inquiries are job-related, are necessary and are conducted

22    for the purpose of determining the employee's fitness for the job in question. Moreover, an

23    employer may discharge the employee based on the results of the medical examination and/or

24    inquiry only if the employer determines that the employee is unable to perform the essential duties

25    of the job safely with or without a reasonable accommodation.

26

27

28

147.    At all times herein, Plaintiff was forced to undergo a medical inquiry, i.e. a drug test, while conditioning Plaintiff's continued employment with Defendant on the results of an unlawful medical inquiry. However, at no time did Defendants have any questions regarding Plaintiff's fitness, whether in regard to his use of any substances or for any other medical reason. Accordingly, Defendants' medical inquiry was not job-related, was unnecessary and had no bearing Plaintiff's ability to perform the essential duties of those jobs to which Plaintiff had been hired by Employers in a safe manner. For these reasons, Plaintiff is informed and believes that Defendants violated the FEHA, Government Code § 12940(e) and California Code of Regulations, Title 2, §§ 11065.

148.    At all times mentioned herein, Plaintiff was willing and able to perform the essential duties and functions of his position and/or other positions sought or available.

149.    At all times, Defendants knew, or should have known, that their conduct, acts, and failures to act and/or the conduct, acts, and failures of its owners, supervisors, agents, and employees, as described herein above, violated Plaintiff's rights under the law. Likewise, Defendants knew, or in the exercise of reasonable care should have known, that unless they intervened to protect Plaintiff and to adequately supervise, prohibit, discipline, and/or otherwise penalize conduct, acts, and failures to act of their owners, managers, employees and/or agents, Defendants' failures to so protect, supervise, and intervene would have the effect of encouraging, ratifying, condoning, increasing and/or worsening said conduct, acts, and failures to act, which is, in fact, what resulted.

150.    As a direct, legal and/or proximate result of the aforesaid acts of Defendants, Plaintiff has suffered actual, consequential, and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

151.    As a direct, legal and/or proximate result of Defendants' conduct, Plaintiff has sustained and continues to suffer emotional distress and related emotional and physical trauma, pain and suffering, personal inconvenience, sickness, and illness, etc. all to Plaintiff's damages in an amount to be shown according to proof.

152.    The conduct of Defendants in unlawfully inquiring into Plaintiff's medical conditions, information and/or status subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendants that Plaintiff would suffer damages in the foreseeable future.  Plaintiff is informed and believes, and based thereon alleges, that Defendants' conduct against Plaintiff was done with an intent to cause injury to the Plaintiff. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized, or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious, or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California Government Code §§ 12965 & 12970.

153.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees which Plaintiff is entitled to recover pursuant to California Government Code § 12965.

## NINTH CAUSE OF ACTION

### FAILURE TO PERMIT INSPECTION OF EMPLOYEE RECORDS

(Cal. Labor Code §§ 226)

(Against ULINE and Does 1-20)

154.    As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

155.    Labor Code §226(b) and (c) requires an employer to allow inspection and copying of pay statement records within 21 days of a written or oral request. Sections 226(f) and (h) further provide for a $750 penalty payable to the employee for each violation and allows an employee to sue for injunctive relief and for an award of attorneys' fees and costs.

156.    Defendants have failed to comply with Labor Code §226 by refusing to permit Plaintiff to inspect or copy records pertaining to his employment with Employer Defendants.

157.    As a result of Employer Defendants' unlawful acts, as described herein, Plaintiff is entitled to recover a civil penalty of $750, pursuant to Labor Code §226(f).

158.    Further, as permitted under Labor Code §226(h), Plaintiff seeks an injunction compelling Employer Defendants to permit him to inspect and/or copy all of the records maintained by Employer Defendants pursuant to Labor Code §226(a), along with an award of Plaintiff's reasonable attorneys' fees and costs.

///

///

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and relief as follows:

A.    For general and special damages, including, but not limited to, lost earnings, benefits, and/or out-of- pocket expenses in an amount according to proof at the time of trial, all in an amount set forth above and/or according to proof at the time of trial;

B.    For further special damages, including but not limited to, lost future earnings, benefits and other prospective damages in an amount set forth above and/or according to proof at the time of trial;

C.    For punitive and exemplary damages in an amount according to proof at the time of trial;

D.    For liquidated damages in an amount according to proof at the time of trial;

E.    For pre-judgment and post-judgment interest, as provided by law;

F.    For attorneys' fees and costs of suit, including attorneys' fees under any applicable statutory or contractual basis, including California Civil Procedure Code §§ 998, and 1021.5; California Government Code §§ 12900, et seq.; and for prejudgment interest under Civil Code §§ 3288, 3291 and Code of Civil Procedure § 998, and any other applicable statutory, or contractual basis;

G.    For an injunction against Defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them from engaging in each of the practices complained of in this Complaint; and

H.    Such other injunctive and equitable relief as the Court may deem just and proper.

Respectfully submitted,

Dated: July 9, 2024

RISSELL LAW, APC

By: _____
MELODY RISSELL LEONARD
*Attorneys for PLAINTIFF*

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a jury trial on all causes of action and claims so triable.

3

4    Dated: July 9, 2024                                    Respectfully submitted,

5

6                                                           By:_____

7                                                           MELODY RISSELL LEONARD
                                                            *Attorneys for PLAINTIFF*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28